

NUMBER 13-08-00543-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

MILES PARK,          Appellant,

v.

THE STATE OF TEXAS,          Appellee.

### On appeal from the 94th District Court of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Yañez, Benavides, and Vela
### Memorandum Opinion by Justice Yañez

Following the trial court's denial of his motion to suppress, appellant, Miles Park, pleaded guilty to the offense of unlawful possession of methamphetamine.[1] The trial court placed appellant on deferred adjudication community supervision for four years, assessed

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a)-(b) (Vernon Supp. 2009).

a $1,000 fine, and certified appellant's right to appeal. By one issue, appellant appeals the trial court's denial of his motion to suppress. We reverse and remand.

## I. PROCEDURAL BACKGROUND

On December 19, 2007, the trial court held a hearing on appellant's motion to suppress evidence. Officer Carl Wright and Linda Park testified at the hearing. The trial court granted appellant's motion to substitute counsel, and on May 22, 2008, the trial court held a hearing on defendant's motion for reconsideration of his motion to suppress. At this hearing, appellant and his girlfriend, Robin Caatz, testified. The trial court denied appellant's motion to suppress evidence. Appellant pleaded guilty to unlawful possession of methamphetamine ("meth"), and the trial court placed him on deferred adjudication community supervision. This appeal ensued.

## II. PRESERVATION AND WAIVER

As a preliminary matter, we must address the State's assertions that appellant has not preserved his issue for appellate review and has waived his appeal.

The State first argues that appellant did not preserve error because he did not specifically identify what evidence he wanted suppressed in his motion. The State relies on *Amador v. State*, where the court of criminal appeals stated the following:

> Appellant's motion to suppress did not identify what evidence he wanted suppressed, nor, as far as we can discern from the record, was such evidence identified at the suppression hearing. This is troubling. As Professor LaFave has pointed out, a motion to suppress "must . . . identify the items which the defendant seeks to suppress." In the absence of such identification, the State and the trial court are left unaware of how the defendant was harmed by the allegedly illegal government activity. It could be argued that, under such circumstances, the trial court could properly deny the motion to suppress as inadequate. In the instant case, however, the State has not made such an argument, and we did not grant review to

2

consider it.[2]

Although we agree with the State that in this case, appellant's motion to suppress did not specifically state the items he sought suppressed, it was apparent from the context of the suppression hearing what items appellant sought to suppress.[3] At the suppression hearing, defense counsel identified the following evidence that the police allegedly obtained illegally: (1) a pipe; and (2) some "baggies" that contained meth. Moreover, at the suppression hearing, the State demonstrated an understanding that appellant sought to suppress the pipe and the baggies containing the meth. Finally, appellant pleaded guilty to unlawful possession of meth. Based on this record, the State and the trial court were aware that appellant sought to suppress the meth found in his residence and were aware of how appellant was harmed by the allegedly illegal government activity.[4] Therefore, we conclude that appellant has preserved error in this case.

Next, the State argues that appellant agreed to waive "all pretrial motions on file" in his plea agreement. In *Durham v. State*, this Court concluded that the appellant waived his right to appeal all pretrial motions because his plea agreement expressly stated that he agreed to "waive all pretrial motions on appeal."[5] However, in *Hubert v. State*, we concluded that although Hubert initialed provisions in a plea agreement stating that he

---

[2] 275 S.W.3d 872, 874 n.3 (Tex. Crim. App. 2009) (internal citations omitted).

[3] *See* TEX. R. APP. P. 33.1(1)(A) (providing that to preserve a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely motion that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context"); *see also Amador*, 275 S.W.3d at 874 n.3.

[4] *See Amador*, 275 S.W.3d at 874 n.3; *see also* TEX. R. APP. P. 33.1(1)(A).

[5] No. 13-98-00568-CR, 2000 Tex. App. LEXIS 4094, at *3-4 (Tex. App.–Corpus Christi June 15, 2000, no pet.) (mem. op., not designated for publication).

waived any right to appeal any pretrial motions filed on his behalf, "[t]he State's waiver argument fail[ed] because it [was] based on select portions of the record that [were] undercut by other handwritten statements."[6] We reasoned that Hubert had not waived his right to appeal his pretrial motions because "[a] contradictory record may rebut the validity of a boilerplate waiver" and "[b]ecause the record contain[ed] at least two specific, holographic instances evidencing Hubert's intent to retain his right to appeal pre-plea bargain motions that the trial court ruled on."[7]

In this case, the plea agreement states that appellant waived any pretrial motions on file; however, it also states that appellant did not waive his right to appeal an adverse ruling on his pretrial motions. In a document entitled "Defendant's Statement Understanding Admonishments," appellant's initials appear next to the following statement:

> With the assistance of my lawyer, I have entered into a plea bargain agreement with the State. My lawyer has explained the plea bargain to me. I understand the plea bargain and I agree to it. I understand that if the [trial court] follows the plea bargain, I am not allowed to appeal the judgment of the [trial court] unless the [trial court] gives me permission to appeal or *except on those matters raised by pretrial motion and ruled upon by the [trial court]*. Nonetheless, I want the [trial court] to accept my plea and to follow the plea bargain agreement. [Emphasis added].

Finally, the trial court certified that appellant had the right to appeal although this was a plea bargain case, because "matters were raised by written motion filed and ruled on before trial and not withdrawn or waived."[8] This case is much like *Hubert* because the

---

[6] 286 S.W.3d 484, 488-89 (Tex. App.–Corpus Christi 2009, no pet.).

[7] *Id.* at 489.

[8] *See Alzarka v. State*, 90 S.W.3d 321, 323-24 (Tex. Crim. App. 2002) (concluding that it was clear that the trial court and the prosecutor intended for appellant to have the right to appeal despite the language in the plea agreement stating "after consulting with my attorney, I voluntarily, knowingly and intelligently, waive my right to appeal").

4

record evidences appellant's intent to retain his right to appeal pre-plea-bargain motions that the trial court ruled on.[9]  Therefore, assuming without deciding, that the complained-of language could be construed as a waiver of appellant's right to appeal his pretrial motions, the language in the trial court's certification of appeal, defendant's statement understanding admonishments, and appellant's plea agreement "directly contradicts and rebuts any presumption raised by the terms of the boiler-plate plea form signed by appellant and reflects that appellant did not waive appeal."[10]

Therefore, we conclude that appellant has not waived his right to appeal his pretrial motion to suppress.

### III. SUPPRESSION HEARING

Officer Wright testified that he went to appellant's residence with Officer B. Moss,[11] who had previously attempted to "do an undercover narcotics buy from that apartment" after appellant's neighbor had complained "that there was constant traffic at all hours of the night to and from the residence" and that "[t]here was always the smell of marijuana, burnt marijuana, but mainly just traffic up and down the stairs."  Officer Moss was unsuccessful in his attempt to purchase narcotics from anyone at appellant's residence.  According to Officer Wright, because the undercover buy was unsuccessful and there were "no informants to that house," the next step was to knock on the door and explain why they were there.

A couple of weeks later on May 5, 2007, Officers Wright and Moss returned to

---

[9] *See Hubert*, 286 S.W.3d at 489.

[10] *See id.*

[11] Officer Moss's first name does not appear in the record, and he did not testify at the pretrial hearing.

5

appellant's apartment for "a knock and talk." Officer Wright acknowledged that they did not have a warrant or probable cause to acquire a warrant to enter appellant's residence; however, according to Officer Wright, if appellant consented, they could have entered appellant's residence. When Officer Wright knocked on the door, appellant answered, and Officer Wright, who was not wearing a police uniform, showed appellant his badge and informed appellant that he was investigating "complaints of drug dealing." According to Officer Wright, while the officers were still outside, appellant explained "that he had briefly had a bad roommate that kind of took over his apartment and that person was actually the one selling drugs." Officer Wright also testified that during the initial conversation, appellant stated that "all he had done was smoke a little weed."

Officer Wright stated that appellant did not ask him to enter the residence. According to Officer Wright, while still outside, he observed appellant's "hand [go] into that couch that was right by the door," and entered appellant's residence for his "safety." Officer Wright explained, "I didn't know what he was reaching for so I grabbed him and secured him." Officer Wright handcuffed appellant. Officer Wright explained that appellant was not placed under arrest, but was "being lawfully detained for [the officers'] safety." Officer Wright stated that Officer Moss then conducted a "protective sweep" of the apartment for their "safety." Appellant would not consent to a search of his apartment; therefore, Officer Moss obtained a search warrant based on items that were allegedly in "plain view." In his affidavit for the search warrant, admitted as defense exhibit one, Officer Moss stated:

> [Officer] Wright made a protective sweep of the back room and the remaining portions of the apartment. During the sweep [Officer] Wright observed mushrooms growing in the middle bedroom. He also observed a clear plastic baggie with a crystaline [sic] substance in the back bedroom where

6

[Caatz] was and also in plain view in the living room was several small plastic baggies containing more crystline [sic] substance believed to be a controlled substance.[12]

Caatz testified that she was asleep in the back bedroom when the police arrived at her residence. She stated that the police spoke with appellant at the front door for about five minutes and then appellant came into the bedroom to get his wallet. According to Caatz, she opened the bedroom door and could see appellant; however she was unable to see the police because the front door was blocking her view. Caatz testified that appellant was "keeping the [front] door a little bit–barely open and just standing there." Caatz stated that the "first time" she saw the police officers was "after they came in and put [appellant] in handcuffs and set him on the couch." Caatz closed her bedroom door. The officers then asked Caatz to come out of the bedroom, and she complied. The officers placed Caatz in handcuffs and asked her to sit on the couch. According to Caatz, Officer Wright then conducted a "sweep" of the apartment without a warrant. Approximately two-and-one-half hours later, the officers acquired a warrant to search the apartment.

Appellant testified that he heard a knock at the door. When he answered the door, he saw Officer Moss standing behind Officer Wright. According to appellant, he "cracked" the door open, and he talked to the officers through this "crack." After the officer requested his identification, appellant closed the door and got his identification and then showed it to the officers, who explained that they had "suspicion that [appellant was] selling narcotics out of his apartment. . . ." The officers informed appellant that they did not have a warrant; however, according to appellant, the officers stated that if he did not give them consent to enter his residence, one officer would stand outside the apartment, while the other

---

[12] Officer Moss also found "a clear glass 'pipe' with burnt white residue on it under the couch's cushion."

obtained a warrant. Appellant testified that he stated, "Okay, well come back with a search warrant." According to appellant, he attempted to close the front door when Officer Wright "stopped" him, and the two officers entered appellant's apartment. Appellant stated that he asked Officer Wright, "So, what's going on?," and Officer Wright replied, "Sir, I smell marijuana and I'm patting you down. . . . I'm patting you down for a protective sweep."

Appellant asserted that he reached for the couch *after* Officer Wright came into the house, stating, "And as [Officer Wright was] patting down, I reached into my pocket and I pitched the pipe into the corner of the couch." Then according to appellant, Officer Moss retrieved the pipe and said, "Now we have probable cause." The officers placed Caatz in handcuffs, and Officer Wright "went through the apartment and did . . . a protective sweep."

Appellant testified that one of the officers "kept asking [him] for consent to search" and presented him with a consent form; however, appellant asked to speak to his attorney, and the officers stated they were no longer able to ask for consent to search the apartment. According to appellant, Officer Moss left to "type up . . . the report for the search warrant." Defense exhibit one, a blank consent-to-search form with the word "Kaatz" [sic] handwritten on it was admitted through appellant's testimony. Appellant asserted that he later found the form in the trash can in his apartment.

## IV. STANDARD OF REVIEW

Whether the trial court properly denied a defendant's motion to suppress is reviewed under a bifurcated standard of review.[13] We give almost total deference to the trial court's determination of historical facts and review de novo the trial court's application of law to

---

[13] *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007).

facts not turning on credibility and demeanor.[14] When, as in this case, the trial court makes no explicit findings of historical fact, the evidence must be viewed in the light most favorable to the trial court's ruling.[15] We must uphold the trial court's ruling if it is correct under any theory of law applicable to the case.[16] "Absent a clear abuse of discretion, the ruling on the admissibility of evidence will not be disturbed."[17]

## V. DISCUSSION

By his sole issue, appellant contends that the trial court should have granted his motion to suppress evidence because the warrantless search of his residence was not reasonable under the totality of the circumstances. Specifically, appellant argues that: (1) there was no probable cause combined with exigent circumstances to enter his residence; (2) the undisputed evidence shows that appellant did not give his consent for police to enter his residence; and (3) the officers did not reasonably believe that a crime was being committed in their presence allowing them to arrest appellant. The State argues that "[a]ppellant's discussion of the exigent circumstances doctrine and the requirement of probable cause is irrelevant under the facts of this case as viewed in the light most favorable to the trial court's ruling." The State asserts that the officers were excused from acquiring a warrant under the emergency doctrine.

An individual is guaranteed the right to be secure from unreasonable searches.[18]

---

[14] *Scardino v. State*, 294 S.W.3d 401, 405 (Tex. App.–Corpus Christi 2009, no pet.); *see Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).

[15] *St. George*, 237 S.W.3d at 725.

[16] *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005).

[17] *Fonseca v. State*, 881 S.W.2d 144, 149 (Tex. App.–Corpus Christi 1994, no pet.) (citing *Rivera v. State*, 808 S.W.2d 80, 96 (Tex. Crim. App. 1991)).

[18] U.S. CONST. amend IV; TEX CONST. art. I § 9.

A warrantless search is presumptively unreasonable under the Fourth Amendment, unless a recognized exception to the warrant requirement exists.[19] A warrantless search may be validated under the doctrine of exigent circumstances, a recognized exception to the warrant requirement.[20] Under the exigent circumstances doctrine, the State may justify a warrantless search or entry of a specific location if it shows that: (1) probable cause existed to enter or search the specific location at the time the search was made; and (2) exigent circumstances existed, which made the procuring of a warrant impracticable.[21]

> Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found. Probable cause that points like a beacon toward the location (but not necessarily any particular person) is the first hurdle. The second hurdle is that exigent circumstances, those which justify an immediate need to enter a residence without first obtaining a search warrant, must also exist.[22]

Another recognized exception to the warrant requirement is the emergency doctrine.[23] Under the emergency doctrine, a warrant is not required if the officer has an immediate, reasonable belief that he or she must act to "protect or preserve life or avoid serious injury."[24] "The exigent circumstances doctrine applies when the police are acting

---

[19] *United States v. Karo*, 468 U.S. 705, 717 (1984); *Fonseca*, 881 S.W.2d at 149.

[20] *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007); *see Fonseca*, 881 S.W.2d at 149 (providing that "[t]he State bears the burden of establishing the legality of a warrantless search or seizure").

[21] *Gutierrez*, 221 S.W.3d at 685 (explaining that "if police have probable cause coupled with an exigent circumstance . . . the Fourth Amendment will tolerate a warrantless search"); *see Parker v. State*, 206 S.W.3d 593, 597 n.7 (Tex. Crim. App. 2006) (setting out that "a warrantless entry into a residence is considered equivalent to a warrantless search") (citing *McNairy v. State*, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991) (en banc)).

[22] *Parker*, 206 S.W.3d at 597 (quoting *Estrada*, 154 S.W.3d at 609) (internal quotations omitted).

[23] *Mincey v. Arizona*, 437 U.S. 385, 392 (1978); *Laney v. State*, 117 S.W.3d 854, 861 (Tex. Crim. App. 2003).

[24] *Mincey*, 437 U.S. at 392.

in their 'crime-fighting' role. . . . [T]he emergency doctrine applies when the police are acting, not in their 'crime-fighting' role, but in their limited community caretaking role to 'protect or preserve life or avoid serious injury.'"[25]

First, we will address the State's argument that the officers' initial intrusion into appellant's apartment was valid under the emergency doctrine, and that therefore, the trial court did not abuse its discretion when it denied appellant's motion to suppress. Officer Wright testified at the suppression hearing that when the officers went to appellant's apartment, they were investigating possible "drug dealing" at appellant's apartment. Here, the police officers were investigating a possible criminal act and were not "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."[26] Therefore, because the officers were acting in their "crime-fighting role," the emergency doctrine does not apply.[27] We must next determine whether the warrantless entry into appellant's apartment was valid under the exigent circumstances doctrine.[28]

Viewing the evidence in the light most favorable to the trial court's ruling, the evidence showed the following: (1) a concerned citizen reported that there was excessive traffic to and from appellant's apartment at all hours of the day; (2) appellant admitted that his former roommate sold drugs from his apartment; (3) appellant stated that he smoked

[25] *Laney*, 117 S.W.3d at 861.

[26] *See id.* at 862-63.

[27] *See id.* (concluding that the emergency doctrine applied because the officer's "actions were totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute," and the officer was protecting a child).

[28] Even though the State argues that the "discussion of the exigent circumstances doctrine and the requirement of probable cause is irrelevant," we must address any theory that would support the trial court's ruling. *See Estrada*, 154 S.W.3d at 607.

11

marihuana; (4) Officers Moss and Wright smelled marihuana;[29] and (5) appellant's "hand went into that couch that was right by the door."[30]

These facts and circumstances known to Officer Wright would have reasonably led a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime would be found.[31]   However, a warrantless entry will not withstand judicial scrutiny if the State does not establish both probable cause and exigent circumstances.[32] The court of criminal appeals has "identified three categories of exigent circumstances that justify a warrantless intrusion by police officers:  1) providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance; 2) protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; and 3) preventing the destruction of evidence or contraband."[33]

> The exigent circumstances analysis focuses upon the reasonableness of the officers' investigative tactics leading up to the warrantless entry. In determining whether exigent circumstances exist, "we apply an objective standard of reasonableness . . ., taking into account the facts and circumstances known to the police at the time of the search.  Thus, the determination of whether exigent circumstances exist is 'essentially a factual one.'  Therefore, if 'reasonable minds may differ' the courts should not second-guess the judgment of experienced law enforcement officers

---

[29] *See id.* at 609 ("The 'odor of an illegal substance' may be a factor that police officers use in determining whether there is probable cause that an offense has been or is being committed.").

[30] *See Dixon v. State*, 206 S.W.3d 613, 616 (Tex. Crim. App. 2006) ("Probable cause to search exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location.").

[31] *See Parker*, 206 S.W.3d at 597; *Estrada*, 154 S.W.3d at 609 (concluding that the odor of marihuana combined with officer's observation of minors under the influence of alcohol, and statement from minors that they had been smoking marihuana and drinking alcohol in the residence was "enough to establish that there was probable cause for [the police officer] to believe that a crime had been or was being committed, and that evidence of that crime would be found" in the defendant's residence).

[32] *Gutierrez*, 221 S.W.3d at 685.

[33] *Id.*

concerning the risks of a particular situation.[34]

Here, Officer Wright testified that he believed that he needed to secure appellant for the officers' "safety" when appellant made a gesture Officer Wright described as "furtive." Officer Wright testified on cross-examination by the State that when appellant reached for the couch, he believed that appellant was "reaching for some type of weapon," and based on his training and experience, he secured appellant. The trial court could have concluded that Officer Wright reasonably believed appellant was armed and dangerous because appellant moved his hand toward a couch cushion while speaking with Officer Wright.

Therefore, the issue is whether it was reasonable for the trial court to determine that exigent circumstances existed because Officer Wright saw appellant's "hand [go] into that couch that was right by the door." According to Officer Wright, when appellant reached his hand toward the couch, appellant was "able to stand and talk to [Officer Wright] . . . while not moving." Officer Wright testified that appellant did not appear to be armed when they were talking and did not appear "mad" at the officer. When asked if he had any reason to suspect that appellant "would be getting a weapon to attack [him]," Officer Wright responded that he "[has] no idea what people are going to do when they reach into couches." A weapons search is "only justified where the officer can point to specific and articulable facts which reasonably lead him to conclude that the suspect might possess a weapon."[35] Although Officer Wright stated that he "believed" that appellant was reaching

---

[34] *Cardenas v. State*, 115 S.W.3d 54, 61 (Tex. App.–San Antonio 2003, no pet.); *see Parker*, 206 S.W.3d at 597 ("[T]he determination of whether an officer has probable cause and exigent circumstances to enter a person's home without a warrant is a factual one based on the sum of all the information known to the officer at the time of entry.").

[35] *Carmouche v. State*, 10 S.W.3d 323, 329 (Tex. Crim. App 2000).

for a weapon, Officer Wright did not articulate any facts supporting his belief. And when defense counsel asked Officer Wright if appellant had "[gone] towards the couch in a threatening manner," Officer Wright stated, "No, it was just a quick furtive movement." Again, although Officer Wright characterizes appellant's movement as "furtive," he did not point to any specific and articulable facts that led him to conclude that appellant might have possessed a weapon.[36]

By Officer Wright's account, appellant was cooperative and did not appear agitated or threatening. There is no evidence that appellant acted suspiciously before he reached for the couch cushion, and appellant did not bend down or lunge toward the couch. Officer Wright did not testify that appellant lied to him or offered contradictory information.[37] In fact, Officer Wright stated that appellant honestly admitted that he smoked marijuana and had a "bad roommate" who had been dealing drugs. Furthermore, Officer Wright did not state any specific facts suggesting that appellant was armed, had committed a violent offense, or was about to do so. Nothing appellant did would reasonably lead to a conclusion that he was reaching for a weapon. The dissent states that we have overlooked the danger that a police officer faces when an officer believes a person is reaching for a weapon. However, we have concluded that in this case, Officer Wright did not articulate any facts to support his belief that appellant was reaching for a weapon. Furthermore, "[s]ituations creating exigent circumstances usually include factors pointing to some danger

---

[36] There was no evidence presented at the suppression hearing that the officers were attempting to prevent the destruction of contraband or evidence. *See Gutierrez*, 221 S.W.3d at 685.

[37] *Cf. Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002) (finding that because the defendant's behavior became increasingly suspicious and the defendant gave contradictory and false answers, the officer was justified in searching the defendant for weapons).

to the officer. . . ."[38]  Here, Officer Wright did not state any factors pointing to some danger to him.  Therefore, taking into account the facts known to Officer Wright at the time the police entered appellant's residence, we conclude that it was not reasonable for the trial court to determine that appellant was reaching for a weapon when appellant reached toward the couch.[39]

We sustain appellant's sole issue.

### VI. CONCLUSION

We reverse and remand for proceedings consistent with this opinion.

_____
Linda R. Yañez,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Dissenting Memorandum Opinion
by Justice Rose Vela.

Delivered and filed
the 25th day of March, 2010.

---

[38] *McNairy*, 835 S.W.2d at 107.

[39] We note that although appellant admitted that his roommate sold drugs from his apartment and that he smoked marijuana, there was no evidence presented that these facts would reasonably lead to a conclusion that appellant was armed and dangerous.